GRIFFIS, P.J.,
for the Court:
¶ 1. In this slip-and-fall case, Joseph Jones alleges that he sustained injuries when he tripped and fell on a misaligned “parking bumper” while he was a patron at the Imperial Palace Casino in Biloxi, Mississippi. The circuit court determined that Jones had failed to establish that a genuine issue of material fact existed and held that the premises owner, Imperial Palace of Mississippi LLC, was entitled to summary judgment. We reverse and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
¶2. On September 3, 2006, Jones had finished playing blackjack on the first floor of the Imperial Palace Casino, and decided to go eat dinner at the restaurant on the second floor. As he walked toward the elevator, Jones noticed the elevators were very crowded. Jones decided to walk up the stairs into the parking garage to the second floor.
¶ 3. When he entered the parking garage, he attempted to avoid the vehicular traffic and walked down a walkway that *1046 was situated between a row of parked cars and the parking-garage wall. Approximately one-third to halfway down the walkway, Jones tripped and fell over a misaligned parking bumper. Jones was injured as a result of the fall.
¶ 4. Employees of Imperial Palace completed an incident report and photographed the parking bumper after Jones’s fall. There were no witnesses to the fall.
¶ 5. On August 8, 2007, Jones filed a complaint against Imperial Palace. The complaint asserted a negligence or premises-liability claim. Imperial Palace filed its responsive pleading, and discovery ensued.
¶ 6. On July 23, 2010, Imperial Palace filed a motion for summary judgment. The motion included an itemization of material facts relied upon and not genuinely disputed, the complaint, excerpts of Jones’s deposition, and Jones’s interrogatory responses. Imperial Palace offered no other testimony, including expert testimony, to support the motion. Imperial Palace’s motion argued that Jones could not prove his premises-liability claim. Jones responded and offered excerpts from his deposition, the Imperial Palace incident report, photographs, excerpts of Paul Dillon’s deposition, and excerpts of Imperial Palace’s Mississippi Rule of Civil Procedure 30(b)(6) deposition, among other exhibits.
¶ 7. On February 10, 2012, the circuit court heard arguments on the motion for summary judgment. On February 23, 2012, the circuit court entered an order that granted Imperial Palace’s motion. The order was prepared and submitted by Imperial Palace’s counsel. Jones now appeals from this judgment.
DISCUSSION

I. Standard of Review

¶ 8. The grant of a motion for summary judgment is reviewed de novo. Karpinsky v. Am. Nat. Ins. Co., 109 So.3d 84, 88 (¶ 9) (Miss.2013). We view the evidence “in the light most favorable to the party against whom the motion has been made.” Id.

II. The Summary-Judgment Standard

¶ 9. The supreme court has held:
Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [Mississippi Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.
This Court has explained that in a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [the movant] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non- *1047 ■moving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.
Id. at 88-89 (¶¶ 10-11) (internal quotation marks and citations omitted).
¶ 10. The court succinctly clarified this standard in a manner in which we can relate to the parties here:
[WJhile [Imperial Palace] carries] the initial burden of persuading the trial judge that no issue of material fact exists and that [it is] entitled to summary judgment based upon the established facts, [Jones] carries the burden of producing sufficient evidence of the essential elements of [his] claim at the summary-judgment stage, as [he] would carry the burden of production at trial. Conversely, because [Imperial Palace does] not carry any burden of production at trial, [it] also do[es] not carry any burden of production at the summary-judgment stage.
Id. at 89 (¶ 13). In this appeal, we will consider whether Jones produced sufficient evidence of the essential elements of his premises-liability claim.

III. Premises Liability

¶ 11. In Mississippi, a premises-liability claim is reviewed in three steps. Haggard v. Wal-Mart Stores, Inc., 75 So.3d 1120, 1124 (¶ 9) (Miss.Ct.App.2011). First, the court “must determine whether the injured party was an invitee, licensee, or a trespasser at the time of the injury.” Id. Second, the court “must determine what duty was owed to the injured party by the business owner/operator.” Id. Third, the court “must determine whether that duty was breached.” Id.

A. Whether Jones was an invitee.

¶ 12. An invitee is a person who enters the premises of another in response to an “express or implied invitation of the owner or occupant for their mutual advantage.” Leffler v. Sharp, 891 So.2d 152, 156 (¶ 11) (Miss.2004). Jones was a business invitee of Imperial Palace.
¶ 13. The premises owner “owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition....” Jerry Lee’s Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988). However, the operator of a business “is not an insurer against all injuries.” Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992). “Proof merely of the occurrence of a fall on a floor within a business is insufficient to show negligence on the part of the proprietor. ...” Sears, Roebuck & Co. v. Tisdale, 185 So.2d 916, 917 (Miss.1966).
¶ 14. To prevail on. his premises-liability claim, Jones must prove by a preponderance of the evidence one of the following: (1) Imperial Palace’s own negligence created a dangerous condition that caused Jones’s injury; (2) Imperial Palace had actual knowledge of a hazardous condition that it did not cause, but failed to adequately warn Jones of the danger he faced as an invitee; or (3) based upon the passage of time, Imperial Palace should have known of the dangerous condition caused by another party, i.e., constructive knowledge of the condition should be imputed to Imperial Palace. Downs v. Choo, 656 So.2d 84, 86 (Miss.1995).

B. Whether Imperial Palace breached the duty owed to Jones as a business invitee.

¶ 15. In granting summary judgment, the circuit court determined that Jones failed to meet any of the three-prongs of a premises-liability claim.

*1048
1. Whether Imperial Palace’s own negligence created a dangerous condition that caused Jones’s injury.

¶ 16. The circuit court found that Jones “was not able to say that [Imperial Palace] caused the parking curb to be out of place.” Indeed, Jones does not argue that Imperial Palace, as the premises owner, caused or created the hazardous condition.

2. Whether Imperial Palace had actual knowledge of a hazardous condition that it did not cause, but failed to adequately warn Jones of the danger he faced as an invitee.

¶ 17. The circuit court found that Jones “has not set forth any evidence to show that [Imperial Palace] had actual knowledge of the misalignment of the parking curb [Jones] tripped upon. As such, this argument also fails.” Jones argues that this was error.
¶ 18. To prove Imperial Palace had actual knowledge of the hazardous condition but failed to warn of or remedy the condition, Jones offered excerpts from Dillon’s deposition. At the time of Jones’s incident, Dillon was employed by Imperial Palace as the shift security manager; he was no longer employed there at the time of his deposition. Dillon investigated Jones’s incident.
¶ 19. Dillon testified that Jones walked down a walkway that was authorized for use by Imperial Palace patrons. Dillon admitted that he and other patrons had used the walkway. Dillon also testified that he knew some of the parking bumpers in the parking garage were out of place prior to the incident. Dillon admitted that such misaligned parking bumpers could pose a tripping hazard. Specifically, he testified:
Q. At the time of the occurrence, were some of the blocks or curbs ... straight and parallel? ... Were some ... off at an angle?
A. I mean, just in that area or all throughout?
Q. Anywhere on the second floor.
A. I’m,sure there were some that were not perfectly straight....
Q. So some were straight; some were not straight? ...
A. Well, what I’m telling you is: ... I know that they are not ■ all straight....
Q. So how many [of the parking bumpers] would you say were skewed? ...
A. I have no idea how many. There’s hundreds of them in [the parking garage] ....
Q. But you knew they weren’t straight?
A. Not all of them.
Q. But you knew that some were not aligned properly.
A. I saw that myself, yeah. I parked in there....
Q. And you knew that before this [incident] happened, right?
A. Yeah. Okay....
Q. [The .misaligned bumpers] could pose as a tripping hazard, couldn’t [they]?
[[Image here]]
A. Yes.
¶ 20. Jones argues that Dillon’s testimony was sufficient to create a genuine issue of material fact as to Imperial Palace’s actual knowledge of the hazard posed by the misaligned parking bumpers prior to Jones’s incident. See Glover v. Jackson State Univ., 968 So.2d 1267, 1276 n. 9 (Miss.2007) (“An employee’s knowledge is imputed to his employer.”) (citations omitted). As a result, since Imperial Palace had actual knowledge that the parking bumpers throughout its garage were misaligned and posed a tripping hazard, Jones *1049 is not required to offer specific evidence that Imperial Palace had actual knowledge of the one specific parking bumper upon which Jones tripped.
¶21. In Drennan v. Kroger Co., 672 So.2d 1168, 1169 (Miss.1996), the supreme court considered an incident where a plaintiff slipped and fell in a puddle of water that accumulated on the floor of the defendant’s premises during a rain storm. The court held that the plaintiff was not required to offer evidence that the defendant had knowledge or notice of the specific leak or puddle at issue because the defendant had knowledge of ongoing issues with roof leaks at its store. Id. at 1172. The court held that “evidence that the roof was prone to leak during periods of rain” allowed the jury to “infer ... that the collection of water on the floor was not completely unexpected.... ” The court reasoned that even if the plaintiff was required to establish notice of the water on the floor, she had done so because the evidence “created an inference that the Kroger store should have been aware of the leaks in the roof. Therefore, the evidence was sufficient as well to create a jury issue as to whether Kroger was negligent. ...” Id.
¶ 22. Imperial Palace provided no evidence to the contradict Dillon’s testimony. For the purpose of summary judgment, Dillon’s testimony is sufficient to find that there is a genuine issue of a material fact in dispute as to whether Imperial Palace had actual knowledge of the hazard posed by the misaligned parking bumpers. Thus, we reverse the grant of summary judgment as to this issue.

S. Whether, based upon the passage of time, Imperial Palace should have known of the dangerous condition caused by another party if Imperial Palace had acted reasonably.

¶ 23. The circuit court held:
“Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence.” Almond v. Flying J Gas Co., 957 So.2d 437, 439 [ (¶ 8) ] (Miss.Ct.App.2007). “The cohrt will not indulge presumptions for the deficiencies in [the] plaintiffs evidence as to the length of time the hazard existed[;] therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator’s constructive knowledge.” Id. [JonesJ’s argument [regarding] the lack of inspection records for the parking garage and an [Imperial Palace] employee’s deposition testimony that he had seen a misaligned parking curb “once upon a time,” somewhere in the parking garage, [do] not provide evidence that [Imperial Palace] had constructive knowledge of the misaligned parking curb [Jones] tripped upon. See Deposition of Paul Dillon[.] Because [Jones] provided this [c]ourt with no evidence as to the length of time the parking curb at issue had been out of place, nor what parking curbs on what floor in what area on what date [Imperial Palace] employee Paul Dillon had seen, there can be no finding of constructive knowledge[,] which is fatal to [Jones]’s case.
¶ 24. To prove that Imperial Palace had constructive knowledge of the hazardous condition and that such knowledge should be imputed to Imperial Palace, Jones offered excerpts from Dillon’s deposition:
Q. Can you give me an estimate of what time, month and year that you did recognize [the misaligned parking bumper]?
*1050 It was probably after April of — let s see. I started in '05, so — so probably after April '06, but I don’t know when....
I’m going to bring you back to that. Do you remember specifically the date when you first would have observed something like that, what year it was, even? <©
Well, like I said, sometime [after] I had been promoted.... So as I was doing my duties as an investigator, any time after April.
April of what year?
It would have been April '06.
April of '06?
Yeah.
Dillon testified that he knew about the hazard posed by the misaligned parking bumpers five months before Jones’s trip- and-fall incident on September 6, 2006. Dillon also testified that he reported the misaligned parking bumpers to his superiors. The circuit court seized upon the following words in Dillon’s testimony to conclude that it did not provide evidence of constructive knowledge:
Q. Did you report that condition that some of these blocks were misaligned to risk management or the maintenance facilities department?
A. I do believe I did mention something about it maybe once upon a time.
(Emphasis added).
¶ 25. The use of the words “once upon a time” are certainly ambiguous. However, for purposes of summary judgment, Dillon’s testimony was sufficient to establish that Imperial Palace (through its employee) knew or should have known of the hazard posed by the misaligned parking bumpers for five months before Jones’s incident.
¶ 26. As a result, we find that there is a genuine issue of a material fact in dispute as to this issue. Thus, we reverse the grant of summary judgment as to this issue.
J. Whether Imperial Palace conducted reasonable inspections.
¶ 27. Jones also argues that the circuit court erred in granting summary judgment without even considering the evidence that established Imperial Palace breached its duty to conduct reasonable inspections of its premises.
¶ 28. Mississippi premises-liability law provides that “an operator of business premise[s] owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition.” Jacox v. Circus Circus Miss., Inc., 908 So.2d 181, 184 (¶ 7) (Miss.Ct.App.2005). “[T]he operator of a business is not an insurer against all injuries.” Id. In order for a premises owner to discharge its duty of reasonable care, Mississippi law requires the-premises owner “to warn of any dangerous conditions not readily apparent, [of] which the owner knew, or should have known,” and “to conduct reasonable inspections to discover dangerous conditions existing on the premises.” Pigg v. Express Hotel Partners, LLC, 991 So.2d 1197, 1200 (¶ 5) (Miss.2008) (emphasis added).
¶ 29. Jones offered the deposition testimony of Imperial Palace’s Rule 30(b)(6) corporate representative, Peter Burns, to establish that Imperial Palace had failed to conduct reasonable inspections of its premises for potential hazards. Burns testified that no repairs or other maintenance with respect to the parking bumpers was done between September 2003 and September 2006:
Q. Has any person, business or entity performed any inspection, maintenance, repair or consultation regard *1051 ing the bumper blocks within a year of the occurrence?
A. Not to my knowledge.
Q. Did you check?
A. I did check with our current facilities management people, none of whom were employed in that particular time period. But their response to me was to their knowledge there was no such inspections made and there is certainly no record of any such inspections ....
Q. Okay. And since that’s true to the best of your knowledge, then there have been no maintenance contractors that have performed any duties with respect to those parking block bumpers on floors one through six during this time period; is that correct?
[[Image here]]
Q. It is September of 2003 to September of 2006?
A. None of which I am aware.
¶ 30. Burns also testified that Imperial Palace did not conduct safety meetings during the time period between June 27, 2005, and September 2006; that Imperial Palace had no safety or risk-management procedures or handbook at that time; and that Imperial Palace had no policies or procedures concerning maintenance or repairs for the parking-garage bumper blocks:
Q. I want to reference you to a period of time between January 1, 2005[,] to September 3rd of 2006. Are you aware of any minutes or notes prepared by [Imperial Palace] relating to any safety meetings or safety council minutes or notes regarding any occurrences, trip and fall occurrences that happened on the first floor one through three involving misaligned bumper blocks? ...
A. The risk management department, which would have had safety fall underneath it, reported to me. So for that time period I can tell you there were no safety committee meetings or safety council meetings for there to be any minutes or record of.
[[Image here]]
Q. Did the risk management team not conduct any meetings?
A. Not any safety related meetings per se. There was no, my knowledge — • and again, risk management reported to me there was no safety, committee or counsel at that time.
Q. ... I’m asking you if there were any minutes or any notes or any documents?
A. ... There were no minutes or notes or documents because there were no meetings.
[[Image here]]
Q. Does [Imperial Palace] or did [Imperial Palace] at the time of the occurrence maintain a safety and risk management procedures handbook?
A. There was none that I’m aware of. And, further, I checked with our risk management manager who was with the company even prior to my arrival, and the answer I received from her was that there was no such manual or handbook.
Q. ... At the time of the occurrence or after did [Imperial Palace] have in place any policies or procedures concerning parking bumper block maintenance and repair?
A. No.
[[Image here]]
A. I did check with our current facilities management people.... But their response to me was' to their knowledge there was no such inspections *1052 made and there is certainly no record of any such inspections.
¶ 31. As set forth in Pigg, Imperial Palace had a duty to warn Jones of any dangerous condition that was not readily apparent, of which it knew or should have known upon reasonable inspection, and to conduct reasonable inspections of its premises for dangerous conditions. Pigg, 991 So.2d at 1200 (¶ 5). Imperial Palace’s Rule 30(b)(6) representative established that Imperial Palace: (1) conducted no safety meetings during the time period of June 27, 2005, to September 2006; (2) had no safety or risk-management procedures or handbook at the time of Jones’s accident; (3) had no policies or procedures concerning maintenance or repairs of the misaligned parking bumpers; and (4) failed to inspect, make repairs to, or conduct maintenance on the parking bumpers between September 2003 and September 2006. Although the circuit court did not address Imperial Palace’s, duty to conduct reasonable inspections, we find that there is a genuine issue of material fact with respect to whether or not Imperial Palace breached its duty to conduct reasonable inspections of its premises.
¶ 32. As a result, we find that there is a genuine issue of a material fact in dispute as to this issue. Thus, we reverse the grant of summary judgment as to this issue.
¶ 33. This case is remanded for further proceedings.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., AND ' BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.