# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00536-SCT

*JOSEPH JONES*

*v.*

*IMPERIAL PALACE OF MISSISSIPPI, LLC*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/23/2012 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | YANCY BRIAN BURNS |
| | LAUREN REEDER McCRORY |
| | FRED MANNINO |
| | RONALD PERESICH |
| | RONALD PERESICH, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SHANDA M. YATES |
| | YANCY B. BURNS |
| ATTORNEYS FOR APPELLEE: | RONALD PERESICH, JR. |
| | LAUREN REEDER McCRORY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REINSTATED AND AFFIRMED - 09/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this premises-liability case, the plaintiff presented insufficient evidence that the defendant created or knew of a dangerous condition on its premises, so we reinstate and affirm the trial judge's summary judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2. While walking through the Imperial Palace Casino's parking garage in the space between the garage wall and the front of the parking spaces—an area that was neither designated for, nor prohibited to, pedestrians—Joseph Jones was injured when he tripped over a concrete parking bumper and fell to the concrete floor.

¶3. Jones filed suit alleging that the parking bumper was misaligned, jutted into the path, and proximately caused both his fall and his injury. The trial judge granted Imperial Palace's motion for summary judgment.

¶4. Jones appealed, and the Mississippi Court of Appeals reversed, finding sufficient evidence to create a jury question as to whether Imperial possessed actual as well as constructive knowledge of the dangerous condition, and whether it had failed to conduct reasonable inspections.[1] Imperial filed a petition for writ of *certiorari*, which we granted.

**ANALYSIS**

¶5. Because Jones was Imperial Palace's patron at the time of the fall, both parties agree that he was an invitee. So Imperial owed Jones the separate duties "'to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view.'"[2] A premises owner who creates a dangerous

---

[1] *Jones v. Imperial Palace of Mississippi, LLC*, No. 2012-CA-00536-COA, 2013 WL 5469741, **3-5 ( Miss. Ct. App. Oct. 1, 2013).

[2] *Mayfield v. The Hairbender*, 903 So. 2d 733, 737-38 (Miss. 2005) (quoting *Massey v. Tingle*, 867 So. 2d 235, 239 (Miss. 2004) (quoting *Corley*, 835 So. 2d at 37)).

condition is presumed to know of its existence.[3]  But, where a dangerous condition resulted from another's conduct, the plaintiff must produce evidence that the owner had actual or constructive notice of the danger for a period of time reasonably sufficient to remedy or warn of it.[4]  In this case, the trial judge granted summary judgment because Jones failed to present such evidence.

**I.      Jones failed to present any evidence that Imperial's negligence created the dangerous condition.**

¶6.      The question of whether Imperial caused the misaligned bumper is easily disposed of because both the trial judge and the Court of Appeals agree there was no such evidence,[5] and Jones cites none.

**II.     Jones failed to present evidence that Imperial knew of the danger in time to provide a warning.**

¶7.      The trial judge found that Jones had failed to present any evidence that Imperial possessed actual or constructive notice of the misaligned bumper that led to the plaintiff's injuries.  In reversing the trial court, the Court of Appeals pointed to the deposition testimony of Paul Dillon, a security investigator with Imperial Palace at the time of the accident, in which he stated that he knew some bumpers became misaligned from time to time in the casino garage, and that he had reported this to his superiors.[6]

---

[3]*Moore v. Winn-Dixie Store, Inc.*, 252 Miss. 693, 173 So. 2d 603, 605 (1965).

[4]*Id.* at 605-06.

[5]*Jones*, 2013 WL 5469741, at *3.

[6]*Jones*, 2013 WL 5469741, at **3-5.

3

¶8.     The Court of Appeals cited our opinion in ***Drennan v. Kroger***,[7] wherein a Kroger

patron slipped in a puddle of water in the store on a day when eight and a half inches of rain

fell.[8]  The plaintiff entered the store at 4:00 p.m., after the rain had subsided, and slipped in

a puddle of water.[9]  The trial judge granted a directed verdict because the plaintiff had failed

to show that Kroger possessed constructive knowledge of the particular puddle involved.[10]

We reversed, stating:

> Drennan produced evidence demonstrating that ***Kroger should have been
> aware*** from past conditions, occurrences, and stains on the ceiling that the area
> above aisle four leaked in periods of heavy rain. Patrons were temporarily
> protected from water collecting on the floor by the placing of buckets below
> the leaks in the store. It was apparently raining very hard on the day Drennan
> suffered her accident. She introduced a photograph of water stains in the
> ceiling tiles directly above aisle four. An engineer for Kroger testified that the
> roof had required a considerable amount of repairs in the past. These
> circumstances created an inference that the Kroger store should have been
> aware of the leaks in the roof.[11]

And we noted that:

> Drennan produced the following evidence in an attempt to establish the
> inference of constructive notice: photographs of water stains on the ceiling tile
> above aisle four; testimony that there was an unusually heavy rain that
> afternoon; the store manager, Wurth, admitted that the store had suffered roof

---

[7]***Drennan v. Kroger Co.***, 672 So. 2d 1168 (Miss. 1996).

[8]***Drennan***, 672 So. 2d at 1169.

[9]***Id.***

[10]***Id.*** at 1168-69.

[11]***Id.*** at 1172 (emphasis added).

4

damage in 1986, and some resulting leaks in the ceiling, and; Wurth conceded that the leaks usually occurred in periods of heavy rain.[12]

¶9.     Jones contends the same rationale should apply in his case because Imperial knew that, from time to time, some bumpers had been misaligned.  But *Drennan* is easily distinguished from the case before us today because that case stands for the proposition that certain known facts—in that case, a known leaky roof over the exact puddle in question, together with heavy rain, put Kroger on sufficient constructive notice that the particular puddle in question was likely to be present.[13]  Stated another way, more was required than simple knowledge of a history of puddles.[14]

¶10.    By contrast, in the case before us today, the plaintiff produced no evidence that Imperial knew or had reason to know that the particular bumper that caused Jones's injury was misaligned at the time of the injury.

¶11.    The ceiling photograph in *Drennan* identified the cause of the specific hazard that led to the plaintiff's injury in that case.  Indeed, the defendant admitted it knew of the leak's existence and the hazard it caused.  With respect, the dissent erroneously attempts to analogize this to Imperial Palace's knowledge that, from time to time, some bumpers—but not necessarily the bumper involved in this case—became misaligned. Were we to adopt the dissent's view, a premiss owner with prior knowledge of any type of hazard on its

---

[12]*Id.* at 1171.

[13]*Id.* at 1172.

[14]*Id.* at 1170 (citing *Waller v. Dixieland Food Stores, Inc.*, 492 So. 2d 283, 285 (Miss. 1986)).

premises—for instance, a spill on its floor—would become liable for all similar hazards, even with no proof of any knowledge of the particular hazard. This would render a premises owner strictly liable.

¶12. The trial judge correctly concluded that Jones had failed to present any evidence that Imperial knew of the misaligned bumper that led to Jones's injury.

### III. Jones failed to present sufficient evidence to survive summary judgment that, even if Imperial had conducted reasonable inspections, those inspections could have revealed the danger.

¶13. Though not addressed by the trial judge, the Court of Appeals also concluded that Jones had presented sufficient evidence to survive summary judgment that Imperial had failed to conduct reasonable inspections of its property.[15] Within a premises owner's duty to keep the premises reasonably safe is included a duty to conduct reasonable inspections.[16] Jones argues that deposition testimony disclosed that Imperial had failed to conduct any inspections of the garage for one year prior to his fall and that he should survive summary judgment on this claim.

¶14. But a premises owner's liability for failure to conduct reasonable inspections is limited in one respect:

> [The premises owner] must not only warn the visitor of dangers of which he knows, but must also inspect the premises to discover possible defects. There is no liability, however, for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not

---

[15]*Jones*, 2013 WL 5469741, at **5-7.

[16]*Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1200 (Miss. 2008) (citing *Gaines v. K-Mart Corp.*, 860 So. 2d 1214, 1216 (Miss. 2003) (citing *Moore*, 173 So. 2d at 603)).

know and could not have discovered with reasonable care. The mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character or of such a duration that the jury may reasonably conclude that due care would have discovered it.[17]

¶15. Here, the plaintiff has failed to present any evidence to show for what period of time the bumper was misaligned. Even if Imperial failed to conduct reasonable inspections, there is simply no evidence to conclude that the problem had existed for "such a duration that the jury may reasonably conclude that due care would have discovered it."[18] Said differently, the plaintiff has failed to put forth any proof that reasonable inspections would have led to the discovery of the dangerous condition, which could have been created by another customer only minutes prior to the injury.

¶16. The dissent's observation that "whether reasonable inspections would have revealed the dangerous condition is a question of fact for the jury to decide . . . ," misses the point. Because the plaintiff has failed to produce any evidence as to how long the bumper remained misaligned, the jury would have no evidentiary basis upon which to consider whether reasonable inspections could have revealed the dangerous condition. Stated another way, the issue of reasonable inspections becomes important where evidence of the duration of the hazard has been produced, so that the jury may conclude that the inspections would have led to timely discovery of the hazard. Stated still another way, even though a jury might conclude that Imperial Palace should conduct daily inspections of its parking lot, such

---

[17]*Moore*, 173 So. 2d at 605.

[18]*Id.*

7

inspections would not have prevented this incident if the hazard was created by another patron an hour before the incident. But if the plaintiff produced proof that the hazard had been present for two days, such inspections would become relevant. Here, the plaintiff has failed to produce any temporal evidence upon which the jury could base such a conclusion.

## CONCLUSION

¶17. A plaintiff cannot succeed on a premises-liability claim without showing either that the defendant created the dangerous condition or that the defendant possessed actual or constructive knowledge of the dangerous condition in sufficient time to remedy it. Summary judgment was proper in this case, because the defendant failed to present any of evidence of either.

¶18. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶19. I respectfully disagree with the majority's conclusion that no genuine issue of material fact existed regarding whether Imperial Palace knew or should have known of a misaligned concrete parking bumper alleged to have caused injury to Joseph Jones. Additionally, a genuine issue of material fact existed with respect to whether reasonable inspections of the premises would have revealed the danger.

8

¶20. The majority opines that, "in the case before us today, the plaintiff produced no evidence that Imperial knew or had reason to know that the particular bumper that caused Jones's injury was misaligned at the time of the injury." In support of that assertion, the majority attempts to distinguish the case of *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1172 (Miss. 1996): *Drennan* "stands for the proposition that certain known facts—in that case a known leaky roof over the exact puddle in question, together with heavy rain, put Kroger on sufficient constructive notice that a particular dangerous condition was likely to be present." But the present case and *Drennan*, in which this Court reversed the trial court's grant of a directed verdict to Kroger, are strikingly similar. *Id.* at 1173.

¶21. The majority's attempt to distinguish *Drennan* from the present case on the basis that it involved "a known leaky roof over the exact puddle in question, together with heavy rain," fails. The store manager in that case "maintained that he was not aware of any leaks in the roof in the area that Drennan fell, nor had he observed any water stains above that area." *Id.* at 1170. He further stated that "[d]uring his two years at the store, he was aware of only two leaks, one above the courtesy booth and another above the frozen foods several aisles away from where Drennan fell." *Id.* The assistant manager of engineering for Kroger testified that "none of the reported problems concerned the area over aisle four," where Drennan sustained the fall in question. *Id.* Drennan did, however, produce "a photograph of water stains in the ceiling tiles directly above aisle four." *Id.* at 1172. According to this Court, that photograph, coupled with testimony that "the roof had required a considerable amount of repairs in the

9

past[,] . . . created an inference that the Kroger store should have been aware of the leaks in the roof." *Id.*

¶22. The majority finds a distinction where none exists, arguing "[t]he ceiling photograph in *Drennan* identified the cause of the specific hazard that led to the plaintiff's injury in that case. Indeed, the defendant admitted it knew of the leak's existence and the hazard it caused." In the present case, as in *Drennan*, Jones attached to his response to Imperial Palace's motion for summary judgment an incident report prepared by Imperial Palace at the time of the incident. The report included the following: "STUMBLED ON PARKING CURB, CURB SLIPPED. WASN'T ATTACHED TO FLOOR." The incident report was accompanied by a photograph which Paul Dillon, an Imperial Palace security investigator at the time, testified was taken immediately following Jones's fall. According to Dillon, the photograph showed the actual parking bumper over which Jones had stumbled. Jones testified in deposition that the parking bumper was "caddy-whompered" at the time he fell over it. Dillon further testified to his awareness that some bumpers had been misaligned prior to the incident and that such misaligned bumpers could pose a tripping hazard to passersby. In fact, Dillon testified that he had reported this condition to the maintenance facilities department "once upon a time," because "if [the parking bumper] is way out there, it would be [a potential hazard], yeah."

¶23. Thus, the present case is very like *Drennan*, where "evidence that the roof was prone to leak during periods of rain" meant that "a juror could easily infer from the evidence that the collection of water on the floor was not completely unexpected. . . ." *Id.* at 1172. Here,

10

the jury could infer from the evidence presented that Imperial Palace should have been aware of the misaligned bumpers, since their misalignment was to be expected, according to Dillon's testimony. Moreover, as in **Drennan**, where photographs of water stains on the ceiling of aisle four above the location at which Drennan had slipped and fallen were received into evidence, the photograph of the particular misaligned bumper over which Jones tripped gives rise to an inference that the bumper was misaligned at the time of Jones's fall. These are questions of fact for the jury to sort out, and were improperly decided as a matter of law at the summary judgment stage. *See **Miss. Dep't of Transp. v. Cargile***, 847 So. 2d 258, 262 (Miss. 2003), *overruled on other grounds by **Little v. Miss. Dep't of Transp.***, 129 So. 3d 132 (Miss. 2013) ("If proof of a causal connection is to be established by circumstantial evidence, it must be sufficient to make the plaintiff's asserted theory reasonably probable, not merely possible, and it is generally for the trier of fact to say whether circumstantial evidence meets this test.") (citations omitted). The Court of Appeals was therefore correct in holding that a genuine issue of material fact existed regarding whether Imperial Palace knew or should have known of the hazard posed by the misaligned parking bumper.

¶24.	With respect to the existence of a genuine issue of material fact regarding whether reasonable inspections of the premises by Imperial Palace would have revealed the danger, the majority posits that "[e]ven if Imperial failed to conduct reasonable inspections, there is simply no evidence to conclude that it existed for 'such duration that the jury may reasonably conclude that due care would have discovered it.'" (citing ***Moore v. Winn-Dixie Stores, Inc.***,

11

252 Miss. 693, 173 So. 2d 603, 605 (1965)). The majority continues: "the plaintiff has failed to put forth any proof that reasonable inspections would have led to the discovery of the dangerous condition, which could have been created by another customer only minutes prior to the injury."

¶25.    The record reflects the following, summarized succinctly by the Court of Appeals and repeated *verbatim* below:

> Imperial Palace's Rule 30(b)(6) representative established that Imperial Palace: (1) conducted no safety meetings during the time period of June 27, 2005, to September 2006; (2) had no safety or risk-management procedures or handbook at the time of Jones's accident; (3) had no policies or procedures concerning maintenance or repairs of the misaligned parking bumpers; and (4) failed to inspect, make repairs to, or conduct maintenance on the parking bumpers between September 2003 and September 2006.

*Jones v. Imperial Palace of Mississippi, LLC*, 2013 WL 5469741, *6 (¶ 31) (Miss. Ct. App. Oct. 1, 2013). In the present case, the Court of Appeals held that "[a]lthough the circuit court did not address Imperial Palace's duty to conduct reasonable inspections, we find that there is a genuine issue of material fact with respect to whether or not Imperial Palace breached its duty to conduct reasonable inspections of its premises." *Id.*

¶26.    In *Pigg v. Express Hotel Partners, LLC*, the plaintiff's son was injured when a mirror in a Holiday Inn room shattered. *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199 (Miss. 2008). This Court held that a genuine issue of material fact existed "as to whether Holiday Inn knew or should have known of the loose mirror, and whether it was negligent in inspecting its premises." *Id.* at 1200. The Court held that "a jury must be allowed to decide whether Holiday Inn breached its duty to keep the premises reasonably safe *and*

12

*whether its inspections of its rooms was reasonable*." ***Id.*** (emphasis added). Because a determination regarding whether reasonable inspections would have revealed the dangerous condition is a question of fact for the jury to decide, the Court of Appeals correctly reversed the trial court's grant of summary judgment to Imperial Palace.

¶27.     The majority posits that this analysis "misses the point." But in ***Moore v. Winn-Dixie Stores, Inc.***, a case upon which the majority relies, this Court reversed the grant of a judgment notwithstanding the verdict (JNOV) where the plaintiff suffered injuries after slipping on a banana peel and falling. ***Moore v. Winn-Dixie Stores, Inc.***, 173 So. 2d 603, 608, 252 Miss. 693 (1965). This Court opined that "the issue of negligence was a question of fact for the determination of the jury *as to whether or not the banana peel had been on the floor a sufficient length of time to charge the appellees as reasonable and prudent operators of the store with notice of the danger*." ***Id.*** (emphasis added). I agree that inspections may "not have prevented this incident if the hazard was created by another patron an hour before the incident." But the length of time of the existence of a dangerous condition is, under the longstanding  jurisprudence of this Court, a jury question not properly disposed of at the summary judgment stage.

¶28.     A genuine issue of material fact exists regarding whether Imperial Palace knew or should have known of a dangerous condition on its premises; a genuine issue of material fact also exists regarding whether reasonable inspections would have led to a discovery of the dangerous condition. I would therefore affirm the Court of Appeals's reversal of the grant of summary judgment to Imperial Palace.

13

**KING, J., JOINS THIS OPINION.**