**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 92-CA-01187-SCT**

*DORIS DRENNAN*

*v.*

*THE KROGER COMPANY D/B/A KROGER FOOD STORES*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/11/92 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| | FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JOSEPH H. MONTGOMERY |
| ATTORNEY FOR APPELLEE: | PAUL J. DELCAMBRE, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 3/14/96 |
| MOTION FOR REHEARING FILED: | 4/2/96 |
| MANDATE ISSUED: | 5/23/96 |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from the Harrison County Circuit Court's decision to grant the Kroger Company's motion for a directed verdict on the basis that Doris Drennan failed to prove Kroger had constructive notice of a dangerous condition on the floor of its grocery store. This Court reverses and the decision of the lower court for a new trial because we find that Drennan established a claim not requiring the existence of notice, and that the evidence was sufficient to create an inference of constructive notice anyway.

¶2. Doris Drennan initiated this action against the Kroger Company, alleging that her slip and fall accident on February 3, 1988 at its store in Gulfport, Mississippi, was the result of its negligence in failing to provide her a reasonably safe place safe to shop. Kroger denied any allegations of negligence on its behalf, and moved for summary judgment, arguing that Drennan failed to offer any evidence that Kroger had actual or constructive notice of water on the store floor. This motion was overruled by the circuit court on June 18, 1990.

¶3. At trial on August 10, 1992, the circuit court sustained Kroger's motion for a directed verdict at the close of Drennan's case-in-chief. Final judgment in Kroger's favor was entered on August 11, 1992. The trial court subsequently denied Drennan's motion to set aside the verdict and for a new trial. She appeals the

lower court's denial of her motion to set aside the verdict, and assigns the following as error:

**I. THE LOWER COURT ERRED BY DIRECTING A VERDICT WHEN A JURY ISSUE WAS PRESENTED.**

**II. THE LOWER COURT ERRED IN EXCLUDING THE TESTIMONY OF THE WITNESS, WAYNE WARD, CONCERNING THE CONVERSATION BETWEEN HIM, THE STORE MANAGER, CHUCK WURTH, AND THE PLAINTIFF IMMEDIATELY AFTER MRS. DRENNAN FELL AND BEFORE SHE WAS ABLE TO RISE FROM THE FLOOR OF THE KROGER STORE, AND IN EXCLUDING THE DRENNAN AND WURTH VERSIONS OF THIS CONVERSATION.**

## THE FACTS

¶4. Doris Drennan traveled three blocks from her home to the Kroger store around 4:00 p.m. on February 3, 1988. She testified that it had rained approximately eight and a half inches that afternoon, although she remembered the rain had eased before she exited her car to walk inside. She wiped her feet on the floor mat at the door entrance and picked up a buggy. As she was walking down aisle four, Drennan slipped and fell to the floor.

¶5. Wayne Ward heard a loud crash in the Kroger as he and his wife were shopping. They turned around and saw Drennan on the floor with a shopping cart on top of her. They pulled the cart off of her, and Ward went to the front to get help. Ward testified that there was a puddle of water six or eight inches in diameter next to Drennan as she lay on the floor. Ward did not actually see Drennan fall, nor did he notice any water dripping from the ceiling. A stock boy and the store manager, Chuck Wurth, came to assist Drennan.

¶6. Drennan introduced photographs of water stains on the ceiling, one of which was directly above the spot where she fell. She did not notice if water was dripping from the stained areas at the time of this incident, nor had she ever noticed water dripping in her many visits to Kroger. Her pants were damp from sitting on the floor. Drennan maintained that she was in good health and was not the type to suffer falls.

¶7. Wurth, the store manager, testified that he was in a budget meeting the afternoon Drennan fell. He found Drennan sitting or lying on the floor when he arrived at aisle four. He also found water in the area, but did not know the source. He claimed that there were only a few quarter-size drops of water about three feet from where Drennan was sitting. He ordered an employee to mop the floor, and filled out an incident report on the matter.

¶8. Drennan went home and made an appointment to see Dr. Crawford at Primary Care immediately. She testified that her right knee was badly bruised, and that her eye had been bruised by the handle of the cart during the fall. She was prescribed some pain medication and referred to Dr. O'Keefe, an orthopedic surgeon, for her knee injury. She visited O'Keefe approximately six times, and several other doctors at Primary Care. She also received treatment for a bladder problem which was attributed to the fall.

¶9. Drennan testified that because of original injury to her knee, her knee gave out while she was hanging a plant, causing her to fall and break her hip. She subsequently underwent hip replacement surgery which resulted in approximately fourteen weeks of recovery time. She continued to suffer pain in her knee.

¶10. Wurth maintained that he was not aware of any leaks in the roof in the area that Drennan fell, nor had

he observed any water stains above that area. During his two years at the store, he was aware of only two leaks, one above the courtesy booth and another above the frozen foods several aisles away from where Drennan fell. The leak over the frozen foods was the result of Hurricane Elena in September of 1986. It was located two aisles from aisle four where Drennan fell. Buckets were sometimes placed underneath these leaks to catch the water. Wurth said these two areas would leak in periods of heavy rainfall. The leak over the frozen foods had been repaired twice by Kroger's engineering department. Wurth maintained that he had been constantly walking the aisles that day to make sure the store was clean since his boss was visiting that afternoon for a budget meeting.

¶11. Steve Sheridan, an assistant manager of engineering for Kroger, produced a letter written by Kroger in 1985 outlining the damage to the roof from Hurricane Elena. In a May 21, 1986 letter, Sheridan had also found that the store needed to "repair roof leaks in middle of store." However, another letter, dated July 30, 1986, stated that all items had been repaired. Sheridan testified that none of the reported problems concerned the area over aisle four, and that all roof problems had been repaired anyway.

## I.

### WHETHER THE LOWER COURT ERRED BY DIRECTING A VERDICT FOR KROGER?

¶12.

> The rule in determining whether a motion for directed verdict should be granted, requires the trial judge to consider the evidence on behalf of the party against whom a directed verdict is requested, along with all reasonable inferences, in the light most favorable to said party, disregard any evidence of the other party in conflict therewith, and, if the evidence and reasonable inferences to be drawn therefrom would support a verdict for such party, the motion for directed verdict should be denied.

*Litton Systems, Inc. v. Enochs,* 449 So.2d 1213, 1215 (Miss.1984) (citing *Georgia-Pacific Corp. v. Blakeney,* 353 So.2d 769, 772 (Miss.1978)).

¶13. A business owner or operator owes a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee. *Munford, Inc. v. Fleming,* 597 So.2d 1282, 1284 (Miss.1992); *Jerry Lee's Grocery, Inc. v. Thompson,* 528 So.2d 293, 295 (Miss.1988). No proof of the operator's knowledge of the condition is necessary where the condition is created by his negligence or the negligence of someone under his authority. *Douglas v. Great Atlantic & Pac. Tea Co.,* 405 So.2d 107, 110 (Miss.1981); *Winn Dixie v. Hughes,* 247 Miss. 575, 156 So.2d 734, 736 (1963).

¶14. However, the owner or occupant is not an insurer against all injuries. *Kroger, Inc. v. Ware,* 512 So.2d 1281, 1282 (Miss.1987). If the dangerous condition was created by someone not associated with the operation of the store, the plaintiff must produce evidence demonstrating that the operator had actual or constructive knowledge of the condition. *Downs v. Choo,* 656 So.2d 84, 86 (Miss.1995). Constructive knowledge is present where, based on the length of time that the condition existed, the operator exercising reasonable care should have known of its presence. *Waller v. Dixieland Food Stores, Inc.,* 492 So.2d 283, 285 (Miss.1986).

¶15. There was substantial evidence demonstrating that the cause of Drennan's fall was a puddle of water on aisle four. Her clothes were damp as she lay on the floor. Other witnesses including the store manager noticed water in the area after her fall; it was subsequently mopped up by a store employee. Whether there was evidence which might have supported an inference of knowledge poses a more difficult question. Because the record contains no evidence, nor was there any contention, that Kroger's employees had actual knowledge of the existence of water on aisle four, the issue is whether the evidence was sufficient to support an inference of constructive notice.

¶16. In *Thompson, supra,* the evidence was insufficient to establish constructive knowledge where a spill on the floor was soiled with foot prints and shopping cart tracks since an employee testified that he had examined the accident site only minutes before the accident and saw nothing. 528 So.2d at 294. In *Waller, supra,* the plaintiff slipped approximately 21/2 hours after the aisle had been checked by an employee. 492 So.2d at 286. This Court found the evidence of constructive knowledge insufficient because, without the existence of tracks or footprints in the liquid found on the floor, it was just as reasonable to assume the substance was spilled one minute before the accident as opposed to a couple of hours earlier. *Id.* Finally, in *Douglas, supra,* we found the evidence insufficient to establish notice where an employee last walked by site of accident approximately fifty minutes prior to accident and observed no dangerous condition in the area. 405 So.2d at 110-11.

¶17. Drennan produced the following evidence in an attempt to establish the inference of constructive notice: photographs of water stains on the ceiling tile above aisle four; testimony that there was an unusually heavy rain that afternoon; the store manager, Wurth, admitted that the store had suffered roof damage in 1986, and some resulting leaks in the ceiling, and; Wurth conceded that the leaks usually occurred in periods of heavy rain.

¶18. Although Wurth testified that he had been constantly surveying the aisles that afternoon because his boss was visiting the store, the facts demonstrated that he was interrupted from a budget meeting to come to the aid of Drennan. There were no footprints or shopping cart tracks in the water, but the heavy rains coupled with the stains on the ceiling directly above the site of the accident were sufficient to establish an inference of constructive notice or that the owner was responsible for the condition. Wurth conceded that the roof leaked in periods of heavy rain. There was no other testimony to suggest that other employees were monitoring the store while Wurth attended the budget meeting. Accordingly, we find that the evidence was sufficient to withstand Kroger's motion for a directed verdict.

¶19. Even though Drennan established the element of notice, its proof is not necessary where it is claimed that the condition was created by the negligence of the proprietor or an individual acting under his authority. *Munford,* 597 So.2d at 1284. The plaintiff in *Munford* also slipped in a puddle of water as she was walking through the store. *Id.* at 1283. An employee testified that she regularly adjusted water bottles on the shelf in order to avoid leakage. Although this Court found the evidence insufficient to show that the store had actual or constructive knowledge of the existence of the water, the evidence was determined to be sufficient to establish a *prima facie* case that the employees negligently created the condition. *Id.* This Court concluded that the employee's testimony created a jury question as to whether she negligently adjusted the water bottle causing it to leak onto the floor. *Id.*

¶20. Kroger contends that this case is no different than *Douglas, supra,* where a frozen food case leaked about a gallon of water onto the floor resulting in a slip and fall accident. 405 So.2d at 109. In *Douglas,*

there was evidence by the A & P porter that water sometimes collected in front of the frozen food case, but the store manager maintained that the freezer had never leaked before. *Id.* at 109. Another employee said there was not any water by the freezers 50 minutes prior to the accident. This Court determined that the plaintiff had the burden of establishing notice because she failed to prove that the water was the result of an affirmative act of the proprietor or his employees. *Id.* at 110.

¶21. However, the present case is distinguishable from *Douglas,* and analogous to the situation presented in *Munford.* In *Douglas,* the freezer had never seriously leaked on prior occasions like it apparently did when it released about a gallon of water onto the floor in a period of fifty minutes before the plaintiff suffered her accident. In the case at hand, there was evidence that the roof was prone to leak during periods of rain. A juror could easily infer from the evidence that the collection of water on the floor was not completely unexpected as was the situation in *Douglas.* As in the *Munford* case, Drennan claimed that the presence of the condition was due to the negligence of the store in repairing the roof, and that this negligence was the proximate cause of Drennan's accident. Proof of notice is not necessary if the condition was created by the negligence of the proprietor or someone under his authority.

¶22. Drennan produced evidence demonstrating that Kroger should have been aware from past conditions, occurrences, and stains on the ceiling that the area above aisle four leaked in periods of heavy rain. Patrons were temporarily protected from water collecting on the floor by the placing of buckets below the leaks in the store. It was apparently raining very hard on the day Drennan suffered her accident. She introduced a photograph of water stains in the ceiling tiles directly above aisle four. An engineer for Kroger testified that the roof had required a considerable amount of repairs in the past. These circumstances created an inference that the Kroger store should have been aware of the leaks in the roof. Therefore, the evidence was sufficient as well to create a jury issue as to whether Kroger was negligent in repairing the roof, and whether it was the proximate cause of Drennan's accident. *See Munford,* 597 So.2d at 1285 (stating that evidence created factual question as to causation of dangerous condition). Drennan may recover on this type claim without proof of the length of time that the water was on the floor before she fell.

## II.

### WHETHER THE LOWER COURT ERRED IN EXCLUDING THE TESTIMONY OF THE WITNESS, WAYNE WARD, CONCERNING THE CONVERSATION BETWEEN HIM, THE STORE MANAGER, CHUCK WURTH, AND THE PLAINTIFF IMMEDIATELY AFTER MRS. DRENNAN FELL?

¶23. At trial, Drennan sought to introduce the testimony of Ward, a customer in the store at that time, concerning conversations between Drennan, Wurth and Ward in the store immediately after Drennan fell. Ward's proffered testimony indicated that Wurth offered to pay all of Drennan's medical bills. In addition, Ward would have testified that he stated to Drennan, "here is my name in case you have to sue these people." The trial judge sustained Kroger's objection to the testimony concerning Wurth's offer to pay Drennan's medical bills. The trial judge said that Kroger could explore Ward's statements about a possible lawsuit against Kroger, but not without opening the door as to the context of these statements which involved Wurth's offer to pay the medical bills. In order to avoid opening the door as to the offer to pay medical bills, Kroger did not question Ward as to his statements regarding a possible lawsuit against Kroger.

¶24. Based on the record before this Court, Drennan objected at trial only to the statements involving Wurth's offer to pay the medical bills. Drennan simply did not desire to have Ward's statements about the possibility of a lawsuit entered into evidence. Therefore, the sole issue must be whether the trial court improperly excluded Wurth's offer to pay Drennan's medical bills.

¶25. M.R.E. 409 provides as follows:

> Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury.

¶26. The statements made by Wurth are clearly not admissible for the purpose of proving liability. *See Thompson,* 528 So.2d at 295 (concluding that trial court properly sustained objection to evidence concerning store's provision of medical bills). Although Drennan contends that the statements were admissible for the purposes of attacking Wurth's credibility, there is no requirement that we address that argument since there was no foundation in the record with which to find this testimony inconsistent. Accordingly, this assignment of error is without merit.

## *CONCLUSION*

¶27. Drennan produced evidence sufficient to withstand Kroger's motion for a directed verdict. This case is hereby reversed and remanded to the Harrison County Circuit Court for a new trial consistent with this opinion.

¶28. **REVERSED AND REMANDED.**

**DAN M. LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.**