MYERS, J.,
for the Court.
¶ 1. On January 19, 2000, Elgandy filed her complaint against Boyd Mississippi, Inc., d/b/a Silver Star Resort and Casino. The court allowed Elgandy to correct her complaint by changing the name of the defendant to Boyd Mississippi, Inc. The complaint set forth two counts for recovery. Count I stated a slip and fall claim, and Count II stated a negligence claim involving ants in Elgandy’s room at the resort. The circuit court granted Boyd’s motion for directed verdict as to Count I, but the court allowed Count II to go to the jury. The jury found for Elgandy on Count II and awarded her $4,000 in damages. Elgandy filed post-trial motions for new trial on Count I and additur on Count II. The court denied both of these motions.
¶ 2. Aggrieved by the trial court’s judgment, Elgandy appeals, raising the following issues:
I. DID THE TRIAL COURT ERR IN GRANTING A DIRECTED VERDICT IN FAVOR OF BOYD ON COUNT I?
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT AN ADDI-TUR ON COUNT II?
¶ 3. Finding no reversible error, we affirm the judgment of the trial court.
FACTS
¶ 4. The facts relevant to Count I are as follows: On March 22, 1998, Elgandy was *1204 staying at the Silver Star Resort and Casino and enjoying the various amenities offered by the resort. After receiving a massage at the resort’s spa, Elgandy decided to relax in one of the resort’s jacuz-zis. As she attempted to enter the jacuzzi, she allegedly slipped and fell and, as a result, suffered personal injuries.
¶ 5. Elgandy alleges that the jacuzzi was surrounded by a “slippery substance” (other than water), that the steps in the jacuzzi had extremely sharp edges, that the jacuzzi’s railing was defective, and that the resort was negligent in allowing the water in the jacuzzi to be obscured by numerous bubbles. She could not identify the slippery substance or offer any evidence explaining how the substance came to be in and around the jacuzzi. In her testimony, she speculated that the slippery substance was massage oil or possibly some kind of “grease,” but she could offer no proof to support this hypothesis. She was also unable to show how long the unidentified slippery substance had been present, and she could not produce any evidence, other than her own personal opinion, that the jacuzzi’s railing or steps were defective.
¶ 6. Regarding her alleged injuries from this fall, Elgandy testified that after falling, she first struck and cut her knee on one of the steps inside the jacuzzi. She conceded that in order to have cut her knee she must have fallen forward into the jacuzzi, which raised the question of how she injured her back if she fell forward. In response, she testified that after she cut her knee she jerked backwards and struck a step on the opposite side of the jacuzzi, thereby receiving serious, permanent injuries to her back.
¶ 7. Some medical personnel from the resort were called to the jacuzzi, but El-gandy did not tell them of her fall, nor did she receive any serious medical treatment on the night of the alleged fall. In the days that followed, she sought treatment for back pain and other problems, which she attributed to her alleged fall into the jacuzzi.
¶ 8. The facts relevant to Count II are as follows: On January 17, 2000, Elgandy was again staying at the Silver Star Resort and Casino. She testified that she was awakened in the night by being bitten by ants. When she awoke, she discovered that ants had crawled into the room and into the bed and had bitten her numerous times. Medical personnel from the resort were called to the room. Some pictures were taken and a report was prepared by the medical personnel. Elgandy was then taken by ambulance to receive treatment for the ant bites. She testified that she is allergic to ant bites and that she suffered serious, permanent injuries due to being bitten.
LEGAL ANALYSIS
I. DID THE TRIAL COURT ERR IN GRANTING A DIRECTED VERDICT IN FAVOR OF BOYD ON COUNT I?
¶ 9. Elgandy argues that the trial court should not have granted Boyd’s motion for directed verdict on Count I. Boyd argues that the trial court was correct in granting a directed verdict, because Elgandy failed to prove actual or constructive notice or that any allegedly dangerous condition was caused by Boyd or its employees.
STANDARD OF REVIEW
¶ 10. We employ de novo review of a trial court’s decision to grant a motion for directed verdict, and, as we conduct this de novo review, we view the evidence in the record in the same light as the trial court. Fulton v. Robinson Indus., Inc., 664 So.2d 170, 172 (Miss.1995).
¶ 11. The standard to be applied by the trial court in considering a motion for di *1205 rected verdict has been stated by this court as follows:
The trial court may direct a verdict for the defendant at the close of the plaintiffs proof under authority of Mississippi Rule of Civil Procedure 50(a) if, in the opinion of the court, the plaintiff has failed to present credible evidence to establish the necessary elements of his right to recover. Hall v. Mississippi Chem. Express, Inc., 528 So.2d 796, 798 (Miss.1988). The court must consider all evidence then before it in the light most favorable to the plaintiff and must concede to the plaintiff all favorable inferences that could reasonably be said to arise from that evidence. Benjamin v. Hooper Electronic Supply Co., Inc., 568 So.2d 1182, 1187 (Miss.1990). Only if, viewed in that light, the court determines that the matter is so overwhelmingly in favor of the defendant that no reasonable juror could find for the plaintiff, should the court direct a defendant’s verdict. Id.
Thomas v. Smith, 786 So.2d 418, 419(¶ 2) (Miss.Ct.App.2001).
¶ 12. Our task then, in light of the applicable standard of review, is to examine the evidence in the record and make a determination as to whether Elgandy presented credible evidence to establish the necessary elements of her right to recover, granting in her favor all reasonable inferences arising from the evidence presented. Id.
DISCUSSION
¶ 13. Before considering the particular evidence in the record, we will note briefly the legal standards governing El-gandy’s claim for recovery in Count I.
¶ 14. The case of Drennan v. Kroger Co., 672 So.2d 1168 (Miss.1996), cited by both parties in their briefs, states the applicable legal standards for a claim such as stated in Count I. “A business owner or operator owes a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee.” Id. at 1170 (citing Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992); Jerry Lee’s Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988)).
¶ 15. While this duty normally depends upon the premises owner’s having actual or constructive notice of any dangerous conditions, we have held that actual or constructive notice is not required when the dangerous condition was caused by the premises owner or someone under its authority. Id. Nonetheless, we have maintained that the owner is not “an insurer against all injuries,” and “[i]f the dangerous condition was created by someone not associated with the operation of the [premises owner’s business], the plaintiff must produce evidence demonstrating that the [premises owner] had actual or constructive knowledge of the condition.” Id.
¶ 16. Thus, the question of whether liability requires a showing that the premises owner had actual or constructive notice depends upon whether the allegedly dangerous condition was caused by the negligence of the premises owner or someone under his authority. Id. If the condition was caused by the premises owner or someone under his authority, then notice is not required for liability; if the condition was caused by someone or something other than the premises owner or someone under his authority, then actual or constructive notice is required. Id.
¶ 17. Turning now to the particular evidence appearing in the record, we find that Elgandy offered the following evidence at trial: her own testimony and several medical bills and records. No other witnesses, documents, or other evidence appear in the *1206 record. In her testimony, she admitted that she could not identify, other than by pure speculation, the slippery substance, nor could she say how long the slippery substance had been in and around the jacuzzi. She speculated that other patrons of the resort could have deposited massage oils in and around the jacuzzi, but she could offer no proof in support of this hypothesis.
¶ 18. Elgandy produced no evidence, other than her own highly speculative testimony, that there was in fact any slippery substance (other than water) in and around the jacuzzi. Moreover, even if we were to accept the allegation that there was some kind of slippery substance in and around the jacuzzi, Elgandy produced no evidence to show how the substance came to be in and around the jacuzzi, or whether Boyd had actual or constructive notice of any not readily apparent condition of slipperiness in and around the jacuzzi.
¶ 19. Given the lone hypothesis she advanced purporting to explain how the slippery substance came to be in and around the jacuzzi, Elgandy would necessarily have had to produce evidence that Boyd had actual or constructive knowledge of the condition. This is because her hypothesis in this regard was that the slippery substance came from other patrons who had received massages. This hypothesis effectively disallows any claim that the allegedly dangerous condition in and around the jacuzzi was caused by Boyd or its employees, since it rests upon the premise that the condition was caused by persons other than Boyd or its employees, namely, other patrons of the resort. Because she alleges that the condition was caused by persons other than the premises owner or persons under its authority, actual or constructive notice was required to be shown by credible evidence in order for Boyd to be found liable. Drennan, 672 So.2d at 1170. Elgandy failed to make such a showing.
¶ 20. Regarding the medical records, the large majority of the medical records we find in the record are bills and records dealing with the ant bite claim and various psychiatric reports. There is nothing in the record showing medical treatment on the night of the alleged fall, and there is nothing in the record to show whether any back problems Elgandy may have later experienced resulted from other causes unrelated to her alleged slip and fall accident.
¶ 21. We find that the trial court did not err in granting Boyd’s motion for directed verdict. Our review of the record indicates that Elgandy failed to present credible evidence to establish the necessary elements of her right to recover. Thomas, 786 So.2d at 419(¶ 2). Among other things, Elgandy failed to produce credible evidence of actual or constructive notice on the part of Boyd.
¶ 22. Having found that Elgandy failed to produce credible evidence to establish a necessary element of her claim for recovery, we affirm the judgment of the trial court granting Boyd’s motion for directed verdict on Count I.
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT AN ADDI-TUR ON COUNT II?
¶ 23. Elgandy argues that the jury’s damage award was grossly inadequate and that the trial court should have ordered an additur on Count II. Boyd argues that the jury’s award was not so outrageous as to strike mankind at first blush as unreasonable and that, therefore, no additur was warranted.
STANDARD OF REVIEW
 ¶ 24. We review a trial court’s decision on a motion for additur for abuse *1207 of discretion. Teasley v. Buford, 876 So.2d 1070, 1075(¶6) (Miss.Ct.App.2004). Because damage awards are within the traditional domain of the jury, we will only order an additur with great caution, when the jury award is “so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.” Id. (quoting Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992)).
DISCUSSION
¶25. Boyd claims that Elgandy incurred $2,186.50 in medical expenses as a result of the ant bites. Elgandy, however, asserts that “it is undisputed and undenied and the bills are more than $4,000 for medical treatment alone.” This assertion by Elgandy is especially puzzling in light of Boyd’s claim, because Boyd’s claim appears upon its face to dispute the contention that Elgandy’s medical bills were more than $4,000. Our review of the record and the exhibits does not reveal that an exact amount of medical expenses was determined at trial. However, the record does reveal that, contrary to Elgandy’s assertion, Boyd disputed the amount, if any, of the medical bills.
¶ 26. Regardless of Elgandy s contrary assertions, our review of the record and the exhibits demonstrates that the jury award was not unreasonable in amount and outrageous, given the evidence produced at trial, and we can not say, based upon the record before us, that the trial judge abused his discretion. Therefore, the judgment of the circuit court refusing to grant an additur is affirmed.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.