# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-01262-SCT

*SAMUEL LASSETER*

*v.*

*AWH-BP JACKSON HOTEL, LLC, AND SPIRE HOSPITALITY, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/25/2022 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| TRIAL COURT ATTORNEYS: | ROBERT G. GERMANY |
| | J. STEPHEN KENNEDY |
| | BEN T. WOODHOUSE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT G. GERMANY |
| ATTORNEY FOR APPELLEES: | BEN T. WOODHOUSE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 02/15/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     On December 22, 2018, Samuel Lasseter sustained injuries when he tripped and fell inside the Jackson Hilton Hotel (the hotel).  Later, he filed a complaint against the hotel, contending that a dangerous defect existed in the flooring.  Following discovery, the hotel moved for summary judgment.  The trial judge conducted a hearing and granted summary judgment for the hotel.  Lasseter then moved to alter or amend the order granting summary judgment.  The trial court denied the motion.  Lasseter appeals both rulings.  We affirm.

**FACTS & PROCEDURAL HISTORY**

¶2.     Seventy-six-year-old Lasseter attended the celebration of his brother-in-law's fiftieth wedding anniversary at the hotel. The party was held on the hotel's ground level in the "Salon A" banquet room. Around 10:00 p.m., Lasseter left the party to go to his room on another floor. As he approached the elevators, he was walking with a cane, accompanied by his forty-one-year-old daughter Tamara Lasseter and nineteen-year-old granddaughter Tianna Irvin each on either side of him.

¶3.     Upon exiting "Salon A," the three walked on a carpeted area leading to a tiled threshold in front of an elevator. Of the three, Lasseter was the only one who initially tripped and fell.[1] Lasseter testified that the heel of his right shoe hung up on a strip joining the two surfaces.[2] After Lasseter was assisted to his room, the hotel's night manager came to check on him and to prepare an incident report.

¶4.     Following the night manager's visit, Lasseter's wife, Betty, went to the area of the fall and testified that she saw a raised strip not secured to the floor. Betty took one photograph of the area where she concluded the fall occurred. Betty also testified that the photograph "doesn't give a clear picture of seeing how that strip was raised." Betty further testified that when she kicked the strip, it flipped up, and she saw space between the carpet and the strip.

¶5.     In September 2020, Lasseter filed suit against the hotel. The complaint alleges that

---

[1]Tianna later "tripped and fell over [Lasseter] when she was trying to run to get help."

[2]The strip was also described as a transition strip, a rubber strip, a vinyl strip, a rubber transition strip threshold, a standard threshold rubber transition strip, a threshold strip, a threshold transition strip, and a plastic strip.

the hotel was negligent by failing to detect a "dangerous defect in the flooring"; repair a "dangerous defect in the flooring"; warn Lasseter and other guests of the "dangerous defect in the flooring"; and otherwise keep the hotel premises reasonably safe. He claimed injuries to his knees and hip.

¶6.     During discovery, the hotel's general manager was deposed. He testified that the hotel's records reflected that the hotel hired a company to install the flooring in 2013. The general manager testified that the hotel possessed no other records related to the installation, maintenance, or inspection of the area where Lasseter tripped and fell or of prior incidents that had occurred there. There was no evidence that the installation company failed to conform to any agreed-upon standards. The general manager testified that he walked the area multiple times a day where Lasseter fell and never noticed any defect. He further testified that he was unaware of a single complaint in that area by staff or visitors regarding defective flooring preceding Lasseter's fall.

¶7.     Also deposed was the hotel's night manager. He separately testified that he never knew of anyone falling over a strip in his twenty years of working at the hotel.

¶8.     In answer to interrogatories, the hotel swore it was unaware of any problem with the area complained of, either before or after Lasseter fell. The hotel also produced a detailed quality-assurance evaluation conducted by the hotel's parent company a month before Lasseter's fall, which did not identify the alleged defect. The hotel offered other evidence to show that more than two-hundred people had traversed the area where Lasseter tripped and fell without incident the very same night.

¶9.  After discovery was completed, the hotel filed a motion for summary judgment. The trial judge granted the hotel's motion. The trial judge found that Lasseter failed to provide evidence sufficient to establish that the strip was a dangerous condition or that the hotel was negligent in creating an alleged dangerous condition. The trial judge further found that no evidence was presented to establish that the hotel had actual or constructive knowledge of a defective condition.

¶10.  Lasseter then moved to alter or amend the order granting summary judgment, arguing that the trial judge erred because a defective condition was created by the hotel based on its admission that the strip was in the same condition as it was when installed. The trial judge denied that motion. The trial judge held that Lasseter failed to show a negligent act by the hotel caused a defective condition when it was installed or since. Lasseter now appeals.

**STANDARD OF REVIEW**

¶11.  "We review the grant of summary judgment de novo and will view the evidence 'in the light most favorable to the [nonmoving party].'" ***Thomas v. Boyd Biloxi, LLC***, 360 So. 3d 204, 209 (Miss. 2023) (alteration in original) (internal quotation marks omitted) (quoting ***Renner v. Retzer Res., Inc.***, 236 So. 3d 810, 814 (Miss. 2017)). In this case, Lasseter is the nonmoving party, and courts review all of the evidence in the light most favorable to him. Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). "The party moving for summary judgment bears

4

the burden of demonstrating that no genuine issue of material fact exists." ***Venture, Inc. v. Harris***, 307 So. 3d 427, 432 (Miss. 2020) (citing ***Johnson v. Pace***, 122 So. 3d 66, 68 (Miss. 2013)). "Summary judgment is mandated where the nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case." ***Ala. Great S. R.R. Co. v. Jobes***, 156 So. 3d 871, 879 (Miss. 2015) (emphasis omitted) (internal quotation mark omitted) (quoting ***Sligh v. First Nat'l Bank of Holmes Cnty.***, 735 So. 2d 963, 965-66 (Miss. 1999)).

## DISCUSSION

¶12.    It is uncontested that Lasseter was an invitee as he was a guest staying at the hotel.[3] "[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage . . . ." ***Corley v. Evans***, 835 So. 2d 30, 37 (Miss. 2003) (second alteration in original) (quoting ***Hoffman v. Planters Gin Co.***, 358 So. 2d 1008, 1011 (Miss. 1978)). But a business owner is not an insurer of their customers' safety. ***First Nat'l Bank of Vicksburg v. Cutrer***, 214 So. 2d 465, 466 (Miss. 1968).

¶13.    "A business owner or operator owes a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee." ***Drennan v. Kroger Co.***, 672 So. 2d 1168, 1170 (Miss. 1996) (citing ***Mumford, Inc. v. Fleming***, 597 So. 2d 1282, 1284 (Miss. 1992)). All business owners have the duty to ensure that their premises are reasonably safe. ***Id.*** If the owner is aware of a

---

[3]The first step in any premises liability case is to classify the injured party as either an invitee, licensee, or trespasser. ***Leffler v. Sharp***, 891 So. 2d 152, 156 (Miss. 2004).

dangerous condition that is not readily apparent to invitees, the owner has a duty to warn invitees of the dangerous condition. ***Id.***

¶14.   In general, undamaged common architectural conditions such as thresholds are not dangerous conditions. ***McGovern v. Scarborough***, 566 So. 2d 1225, 1228 (Miss. 1990) ("A person entering the building through this door was obliged to step up two to three inches in any event. . . .  And, it is impossible to envision this doorway as creating a *danger* of some kind, in some way different from thousands of like doorways.").[4]

¶15.   There is no liability when the injured party fails to show a dangerous condition. ***Kroger, Inc. v. Ware***, 512 So. 2d 1281, 1282 (Miss. 1987), *overruled on other grounds by* ***Tharp v. Bunge Corp.***, 641 So. 2d 20, 23-24 (Miss. 1994).  To prevail, the injured party must:

> (1) show that some negligent act of the defendant caused his injury; or, (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or, (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

***Downs v. Choo***, 656 So. 2d 84, 86 (Miss. 1995).  No proof of the business owner's or operator's knowledge of a dangerous condition is necessary when the dangerous condition was created by the owner's or operator's negligence or the negligence of someone under its authority. ***Drennan***, 672 So. 2d at 1170.

---

[4]*See also* ***Wood v. RIH Acquisitions MS II, LLC***, 556 F.3d 274, 282 (5th Cir. 2009) ("At least those hazards that are similar to undamaged thresholds, curbs, and steps, which are common architectural features for buildings and parking lots, may properly be found not to be unreasonably dangerous.").

¶16. Although Lasseter alleged that the strip was buckled before his fall, neither Lasseter, his daughter, nor his granddaughter observed a buckled strip prior to his fall. The photograph taken by Betty after the fall did not reveal a buckled strip. Lasseter failed to offer admissible evidence sufficient to create a jury issue as to whether a defective condition, i.e., a buckled strip preexisted or caused Lasseter's trip and fall.

¶17. Regarding the negligent act theory, the trial court held:

> The [theory] is . . . whether or not some negligent act of the defendant caused the injury. Here in this particular case, the [c]ourt doesn't see that there was a negligent act of the defendant . . . in the alternative, placing that transition strip there, is a method of attempting to avoid a negligent act where you have a transition in flooring and by it being tile . . . leading to carpeted floor, then the carpet can actually buckle and cause someone to trip or fall. So the first factor, in the [c]ourt's opinion has not been met.

While Lasseter is correct that when a dangerous condition is created by an owner's own negligence, no knowledge of the dangerous condition needs to be shown, he still must provide evidence sufficient to establish the existence of a dangerous condition caused by the hotel's negligence. *See Jerry Lee's Grocery, Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988).

¶18. The trial court stated during the hearing on Lasseter's motion to alter or amend the order:

> But here's the question, when was it shown that it was the hotel's negligence that caused this issue. . . . The [c]ourt . . . understands that unless there is something shown to the [c]ourt to indicate that the defendant caused the alleged condition that caused injury to the plaintiff, that if there is nothing shown to the [c]ourt that it was the Defendant's own making, but if it could be said that a third person caused the condition, then the burden of proof is on the plaintiff to show that the defendant had actual or constructive knowledge of its presence. That was not shown.

Lasseter pleaded in his motion to alter or amend the trial court's order granting summary judgment that the only issue was whether the transition strip was in a defective condition at the time of the accident. Lasseter failed to produce evidence sufficient to establish that the strip was a defective condition before he fell or that the alleged dangerous condition existed prior to his fall as a result of the negligent acts by the hotel, its employees, or an entity under its authority.

¶19. Lasseter argued that the general manager's testimony, the quality assurance evaluation, and the hotel's answers to interrogatories were admissions that the strip was in the same condition from the date of installation up to Lasseter's fall. Lasseter failed to present evidence sufficient to establish that the strip was in a defective condition since installation in 2013.

¶20. Lasseter testified that while walking from the carpeted area to the tile, he never saw a "buckled partition." Later Lasseter was asked whether he saw that part of the floor before he fell. He responded that he did not. He was also asked how he knew the strip was buckled if he did not see it. Lasseter responded that he was told the strip was buckled. This hearsay statement is insufficient to establish it as a disputed fact.

¶21. Betty's testimony failed to establish the condition of the strip before or at the time Lasseter fell. Betty testified that she went downstairs to inspect the area after her husband tripped and fell and the night manager spoke with them. She testified that it was raised and that "if you push it with your foot it would flip up," as well as observing space between the carpet and the plastic of the transition strip. She testified that at that time, "it was not secured

8

to the floor." Neither her testimony nor her photograph created a dispute of a material fact regarding the condition of the transition strip before Lasseter fell.

¶22. The trial court next examined whether the hotel had actual or constructive knowledge of a dangerous condition and failed to warn Lasseter. "Where the presence of the dangerous condition is due to the act of a third party, it must be shown that the defendant had actual or constructive knowledge of its presence." *Waller v. Dixieland Food Stores, Inc.*, 492 So. 2d 283, 285 (Miss. 1986) (citing *Douglas v. Great Atl. & Pac. Tea Co.*, 405 So. 2d 107, 110 (Miss. 1981)). "Constructive knowledge is established by proof that the condition existed for such a length of time that, in the exercise of reasonable care, the proprietor should have known of it." *Id.* (citing *Douglas*, 405 So. 2d at 110).

¶23. Despite Lasseter's claim, the trial court found no testimony that the hotel was aware of any problems with the transition strip or that it was defective for a sufficient amount of time to impute constructive knowledge to the hotel. There was no admissible evidence that the transition strip was worn and in need of repair or that the hotel was aware of any prior complaints regarding the area. Similarly, testimony that the area remained subsequently in the same condition since its installation is not evidence sufficient to establish that a dangerous condition existed for a sufficient length of time to impute constructive knowledge of that condition.

¶24. Lasseter contends that the trial court erred by requiring proof of notice. He asserts that "[n]otice of the defect, actual or constructive, is not required under these facts." But notice of a dangerous condition is only not required when a plaintiff provides evidence

9

sufficient to establish a genuine issue of material fact that the condition was created by the defendant's negligence. *Drennan*, 672 So. 2d at 1170. And Lasseter failed to produce evidence sufficient to establish that a negligent act by the hotel, its employees, or anyone under its authority caused the transition strip to be a dangerous condition.

## CONCLUSION

¶25. Lasseter appealed the trial court's decision to grant the hotel's motion for summary judgment and to deny his motion to alter or amend the trial court's order. Finding no error, the Court affirms both decisions. The trial court considered the legal elements of the claim and applied them to the facts presented. The trial court did not err by granting the hotel's motion for summary judgment or by denying Lasseter's motion to alter or amend the order.

¶26. **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**