# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00345-COA

LAKISHA ANDERSON                                      APPELLANT

v.

SW GAMING LLC D/B/A HARLOW'S CASINO          APPELLEE
RESORT AND SPA

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2023 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENJAMIN SETH THOMPSON |
| ATTORNEYS FOR APPELLEE: | BLAKE DAMON SMITH |
| | TYLER DOUGLAS JORDAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 06/04/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Lakisha Anderson was visiting Harlow's Casino Resort and Spa on August 6, 2016, when she slipped and fell as she was exiting a restroom at the casino. She filed a premises liability action in the Washington County Circuit Court against SW Gaming LLC d/b/a Harlow's Casino Resort and Spa (Harlow's).[1] Harlow's moved for summary judgment, which the circuit court granted.

¶2. Anderson appeals, asserting that she presented sufficient evidence to create genuine

---

[1] SW Gaming LLC was the owner/operator of the casino, but we will refer to the company as Harlow's for convenience.

issues of material fact with respect to each element of her premises liability claim.[2]  For the reasons discussed below, we affirm the circuit court's entry of summary judgment in Harlow's favor.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶3.    In her complaint, Anderson alleges that on August 6, 2016, she slipped and fell "in a puddle of a wet slippery substance while attempting to exit the restroom" at the casino.  She further alleges that "this puddle was not readily visible, and no warning cones or wet floor signs were present" when she fell and was injured allegedly due to the defendant's negligence. Although Anderson initially sought recovery for her alleged injuries based on several grounds for relief,[3] she eventually proceeded solely on her slip-and-fall premises liability claim against Harlow's.

_____

[2] Anderson also asserts on appeal that "this Court needs to determine whether, *to the extent Harlow's argued that the danger was open and obvious*, the lower court recognized that Mississippi is a pure comparative negligence jurisdiction."  (Emphasis added). Harlow's, however, does not argue on appeal that the alleged dangerous condition was "open and obvious."  We therefore do not address this issue.

[3] In addition to her premises liability claim, Anderson's claims for relief included negligent supervision, hiring, retention, and training of its employees; vicarious liability; and gross negligence.  Anderson sought compensatory and punitive damages.  An "Agreed Rule 54(b) Final Judgment of Dismissal with Prejudice" was entered on December 13, 2021, dismissing Anderson's claims for gross negligence and punitive damages claims.  Regarding Anderson's negligent supervision, hiring, retention, and training of its employees and vicarious liability claims, Anderson acknowledged in her response to Harlow's summary judgment motion that these issues were "moot" because Harlow's admitted vicarious liability.  The circuit court specifically noted Anderson's acknowledgment of this point in its final judgment and determined that these claims were therefore precluded.  Anderson does not challenge this determination on appeal.

2

¶4. Anderson was a regular casino customer. She testified in her deposition that "she would maybe go [to Harlow's Casino] twice a week." She never had any issues at the casino before the August 6, 2016 incident. Regarding that incident, Anderson said that she entered the restroom, "made a right to where the sinks [were]" and then entered a stall to use the bathroom. "When I come out of the stall, I went along the same wall [she walked along when she entered the bathroom], and I come around to exit the bathroom, and I ended up on the floor." The incident happened at approximately "2040-2045" (8:40-8:45 p.m.).

¶5. Anderson testified that she was looking straight ahead as she walked into the restroom and stall and as she was leaving the restroom. She did not see anything on the floor before she fell. Anderson said that it was not until after she fell that she "noticed [she] was in the puddle of water." She said it was "clear." Anderson had no information about how long the water had been there, if any employee of Harlow's knew that it was there, or how the water got there.

¶6. Gloria Gordon, a Harlow's "EVS"[4] attendant (housekeeping attendant), was also deposed. As a housekeeping attendant, Gordon would "walk the floor" of the casino and conduct regular restroom checks. She was questioned about the restroom where Anderson fell. Gordon testified that before she took her break at about 8:45 p.m. that evening, she did a "regular check" of that restroom, explaining that "[e]very time we leave off our floor, we have to go check the bathroom every time we do, to clean [it]." Gordon said that when she

_____

[4] EVS stands for Environmental Services.

3

checked that evening, she followed her normal routine. That routine included cleaning the counters, checking for toilet overflows and things like that, and mopping any water on the floor. There was no toilet overflowing in the restroom at that time. Gordon confirmed that before she went on break, she would make sure the floor was clean and dry and would then put out the wet floor signs, and she did so before her 8:45 break that evening. She said that the wet floor signs were always placed on the floors in the restrooms "in case no one would go in there, you know, and fall and hurt the[m]selves." The wet floor signs were always placed "where the sinks are [and at] the entrance and exit . . . as a precaution in case there is water on the floor." Gordon confirmed that the restroom floor was clean and dry before she left for her break at about 8:45 p.m. on the evening of the incident, and she confirmed she had put up the wet floor signs.

¶7. Anderson fell while Gordon was on her break. Gordon testified that shortly after she returned from her break about 9:00 p.m., she was told by a patron that Anderson had fallen, so she went to the restroom and saw "the lady on the floor" and that there was water on the floor at that time. Gordon said she did not see Anderson fall, and confirmed that the floor had been clean and dry when she left for her break. She further confirmed she had no information about how the water came to be in the restroom, or whether any Harlow's employee caused it to be there or knew it was there.

¶8. Wendy Pittillo, a Harlow's security officer, was also deposed. Part of her job involved inspecting the casino restrooms, primarily for any security issues. She explained

4

that if she ever saw water on the restroom floor, she cleaned it up herself or notified housekeeping and waited for another employee to arrive to attend to the issue. With respect to the restroom at issue, Pittillo testified that she completed a restroom security check about five hours before Anderson fell. She did not see any water on the floor.

¶9.　The record also contains an incident report completed and signed by a Harlow's supervisor, Antonio Kimble, but it was not certified or signed under oath. The incident report is also signed by Anderson. Six unsworn, uncertified statements collected by Kimble in the course of his investigation of the incident are included with the report. These statements were completed by Anderson, post-fall witnesses Gloria Wilson and Lucille Mayfield, and three Harlow's employees. These Harlow's employees were Alleaner Smith, another security officer; Pittillo; and Gordon. For ease of reference, we summarize each statement.

¶10.　Anderson's statement provides that as she walked into the restroom, "there was no water . . . that [she] seen"; she "went into the restroom come out and fell turning the corner returning [to] the hallway." "There were no signs down [where she fell, and] there was another lady who placed the signs after [she] fell."

¶11.　Wilson entered the restroom after Anderson fell. Her statement provided that "when [I was] entering the bathroom the young lady was getting up and . . . she said[,] [']I fell in the water there.[']" Wilson told a woman entering the restroom that "there was water there" and then Wilson "took the wet floor sign from the ent[rance] of the bathroom and place[d] [it]

5

there where the water was" and put another wet floor sign in front of the stall.

¶12.    Mayfield's statement provided that when she came out of a restroom stall, she "saw a young lady . . . trying to get to her feet . . . .  It look[ed] as if the stool [sic] had ran over because there was lots of water on the floor."

¶13.    Smith's statement provided that he was approached by a patron who told him that Anderson had fallen.  He went to check on Anderson and to arrange for an ambulance.  An African American woman told him that "there was no 'wet floor' signs near the water [where Anderson fell] but she put some signs near the water on the floor."  Smith reported that "[t]here was a large volume of water covering a[] large area" in the restroom.

¶14.    Pittillo's statement provided that she had conducted a restroom check on the subject restroom at 3:52 p.m. and "saw a wet floor sign stationed on the floor upon entering."

¶15.    Gordon's statement provided: "I went to take my break at 8:45 p.m., and I have sign setting [on] the floor all the time and when I left [there] were no toilet stop up at all.  So I didn't have no problem with the toilet all day and the restroom [was] clean before I went to break, so when I came back the security told me somebody had [fallen] down in the restroom."

¶16.    After discovery had been completed, Harlow's moved for summary judgment, asserting that Anderson lacked sufficient competent summary judgment evidence to create a genuine issue of material fact that (1) Harlow's caused water to be on the floor of the restroom, or (2) Harlow's had actual or constructive knowledge the water was in the restroom

6

and there was a sufficient opportunity to correct it.

¶17. In response, Anderson asserted the incident report statements demonstrate that there was a "large volume" of water in the restroom where Anderson fell, and "there was no 'wet floor' sign in or around that area." Anderson further asserted that "there is no evidence to suggest that an incident occurred in the restroom that would cause water to gush out from a sink, toilet, or other source," so there was at least a genuine issue of material fact whether the water had been in the restroom long enough to give Harlow's constructive notice of the water and to remedy the situation.

¶18. The circuit court granted summary judgment in Harlow's favor and entered a final judgment dismissing Anderson's lawsuit against Harlow's on March 6, 2023.

¶19. Anderson appealed.

## STANDARD OF REVIEW

¶20. This Court "review[s] the grant of summary judgment de novo and will view the evidence in the light most favorable to the nonmoving party." *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 209 (¶16) (Miss. 2023) (internal quotation marks omitted). In this case, Anderson is the nonmoving party. Thus, the evidence must be viewed in the light most favorable to her. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶21.    Harlow's, as the movant, "bears the burden of demonstrating that no genuine issue of material fact exists." *Venture Inc. v. Harris*, 307 So. 3d 427, 432 (¶15) (Miss. 2020).  In responding to a summary judgment motion, Anderson, as the nonmoving party, "may not rest upon the mere allegations or denials of [her] pleadings, but [her] response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  M.R.C.P. 56(e).  "Summary judgment is mandated where the nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case." *Byram Café Grp. LLC v. Tucker*, 344 So. 3d 844, 846 (¶11) (Miss. 2022).

## DISCUSSION

¶22.    Anderson asserts that the circuit court erred in granting summary judgment in Harlow's favor because there are genuine issues of material fact "as to Harlow's failure to warn or make safe, and if a dangerous condition existed long enough to provide Harlow's with constructive notice."  We disagree.  We affirm the circuit court's order granting summary judgment in Harlow's favor for the reasons discussed below.

¶23.    We begin any premises liability case by "classifying the status of the injured person as an invitee, licensee, or a trespasser." *Leffler v. Sharp*, 891 So. 2d 152, 156 (¶10) (Miss. 2004).  It is uncontested that Anderson, a casino patron, was an invitee in this case.  A business owner owes a duty to an invitee to "keep [its] premises in a reasonably safe condition." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 89 (¶12) (Miss. 2013).  A

8

business owner, however, "is not an insurer of [its] patrons' safety." *Id.* at (¶15).

¶24. Regarding a premises liability slip-and-fall case such as the one Anderson has brought, the plaintiff must:

> (1) show that some negligent act of the defendant caused [her] injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

*Byram Café*, 344 So. 3d at 847 (¶12). With respect to the second and third factors, "the plaintiff must also show that the proprietor had 'a sufficient opportunity to correct' the dangerous condition." *Thomas*, 360 So. 3d at 213 (¶34) (quoting *Karpinsky*, 109 So. 3d at 89 (¶12)); *Jones v. Imperial Palace of Miss. LLC*, 147 So. 3d 318, 319-20 (¶5) (Miss. 2014) ("[W]here a dangerous condition resulted from another's conduct, the plaintiff must [also] produce evidence that the owner had actual or constructive notice of the danger for a period of time reasonably sufficient to remedy or warn of it.").

## I. Whether Harlow's caused the dangerous condition.

¶25. With respect to the first factor, we find no evidence that Harlow's or its employees negligently caused the water to be on the restroom floor. There is no evidence that water was on the restroom floor before Anderson fell, no witness could say how the water got on the restroom floor, and no witness could say that a Harlow's employee caused the water to be there.

¶26. Anderson testified that she did not see anything on the restroom floor when she

entered the restroom, entered the stall, or as she was leaving the restroom. She did not know there was water on the floor until after she fell. Anderson acknowledged that she did not know how the water got there or how long it had been there. Nor could she say whether a Harlow's employee caused the water to be there or whether any Harlow's employee even knew that it was there.

¶27. Gordon testified that she inspected the restroom and cleaned it before she left for her break at approximately 8:45 p.m. She did not see water or anything else on the floor; she confirmed that the restroom floor was clean and dry before she left to go on her break. She had no information on how the water came to be in the restroom or whether any Harlow's employee caused it to be there. Pittillo testified that when she inspected the restroom earlier that day, she saw no water on the floor.

¶28. In short, we find no evidence that Harlow's caused the "dangerous condition" (water on the restroom floor) in this case. Anderson points out that she slipped and fell shortly after Gordon went on her break. But Anderson does not argue that a Harlow's employee (Gordon) caused the water in the restroom as opposed to another cause such as a spill or a leaking toilet.[5] We point this out because "the inference of a defendant's negligence as the proximate

---

[5] Anderson asserts that "Harlow's need not have directly caused the water [in the restroom] in order for a jury to impose liability." Anderson recognizes that "[t]he water may have come from something other than a Harlow's employee—it could have, for instance, been caused by an overflowing toilet or a spill—and yet, if [the water] was there long enough for Harlow's to have known about it . . . [Harlow's] still should have warned [Anderson]."

cause of a plaintiff's injuries may not be drawn if the record indicates that the cause could have just as likely occurred from causes other than the defendant's negligence." *Byram Café*, 344 So. 3d at 847 (¶17); *Evilsizer v. Beau Rivage Resorts LLC*, 354 So. 3d 379, 383 (¶13) (Miss. Ct. App. 2023); *see Spangler v. Beau Rivage Resorts Inc.*, 689 F. App'x 830, 834 (5th Cir. 2017) (determining that the mere fact that defendant casino's employee was the last person to visit the restroom before plaintiff casino patron slipped and fell in water in the restroom did not create a genuine issue of material fact whether the casino employee caused the water to puddle near the toilet). We find that the record contains no evidence that would allow a reasonable inference that any particular explanation for the water on the restroom floor is more likely than any other explanation. Based upon the record before us, we conclude that the circuit court correctly found that there is no genuine issue of material fact whether a Harlow's employee caused the water on the restroom floor.

II. **Whether Harlow's had actual knowledge or constructive knowledge of the dangerous condition.**

¶29. Anderson asserts that the record contains sufficient evidence that Harlow's had actual or constructive knowledge of the water on the restroom floor so as to allow her to survive summary judgment with respect to her premises liability claim. We disagree.

¶30. Regarding Harlow's alleged actual knowledge, Anderson must not only show that Harlow's knew about the water on the restroom floor, but also that it "had an opportunity to correct the dangerous condition." *Thomas*, 360 So. 3d at 214 (¶36). Upon review, we find no evidence in the record that Harlow's had actual knowledge of the water on the restroom

11

floor when Anderson slipped and fell. As noted, Anderson did not see anything before she fell, and no other witness could say that the water was there before Anderson fell or if any Harlow's employee knew about the water on the restroom floor before Anderson fell. This is true even if we consider the unsworn, uncertified statements from Harlow's employees and the third-party witnesses, an issue we address in more detail below.

¶31. *Thomas* is a slip-and-fall case similar to the case here but one in which the supreme court found that the plaintiff introduced sufficient evidence of notice to avoid summary judgment. *Id.* at 214 (¶¶37-38). The evidence introduced in *Thomas* starkly contrasts with the complete absence of evidence in this case. Comparing the circumstances in *Thomas* to those in Anderson's case is instructive.

¶32. Hotel patron Thomas was injured when she fell while descending stairs from a hot tub to the tiled pool deck. *Id.* at 208 (¶5). She sued the hotel owner (Boyd), claiming her injuries were caused by Boyd's negligence. *Id.* at (¶7). The trial court granted summary judgment in Boyd's favor, *id.* at 209 (¶14), which the supreme court reversed on writ of certiorari. *Id.* at 215 (¶45).

¶33. The supreme court found that Thomas introduced evidence sufficient to create a genuine issue of material fact of the existence of a dangerous condition, that Boyd knew about it, and that Boyd had sufficient time to remedy the condition. *Id.* at 214 (¶¶37-38). This evidence included deposition testimony that water was on the pool deck area where Thomas fell; surveillance footage, likewise showing water on the deck in that area when

viewed in the light most favorable to Thomas, the nonmoving party; and "[deposition] testimony showing that the area was slippery and dipped inward." *Id.* at 214 (¶37). Additionally, Thomas introduced two incident reports of recent prior falls in that area, as well as deposition testimony of Boyd's employee in which she said "that she informed her superiors about the dangers of that area and about prior instances of patrons slipping and falling there." *Id.* at 214 (¶38).

¶34. No such evidence, or any comparable evidence, is present in this case. Indeed, there is a complete lack of evidence that the water was on the restroom floor before Anderson fell or that Harlow's knew about the water in the restroom at all. Accordingly, we find that Anderson has failed to introduce sufficient evidence to create a genuine issue of material fact that Harlow's knew about the water on the restroom floor and had sufficient time to correct the condition.

¶35. We also do not find sufficient evidence in the record demonstrating the existence of a genuine issue of material fact whether Harlow's had constructive notice of the water on the floor. "Constructive knowledge is present where, based on the length of time that the condition existed, the operator exercising reasonable care should have known of its presence." *Bonner v. Imperial Palace of Miss. LLC*, 117 So. 3d 678, 688 (¶37) (Miss. Ct. App. 2013) (quoting *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996)). To establish constructive knowledge, Anderson "must produce admissible evidence of the length of time that the hazard existed[.]" *Cotton v. Fred's Stores of Tenn. Inc.*, 122 So. 3d 140, 143

13

(¶7) (Miss. Ct. App. 2013). In this regard, "the court will indulge no presumptions to compensate for any deficiencies in the plaintiff's evidence as to the time period." *Id.*

¶36. In this case, there is no evidence of how long the water was on the restroom floor. As we have noted, there is no evidence that the water was present before Anderson fell. Anderson also testified that the water was "clear"; there is no evidence of footprints through the water, smear marks, or evidence that it had been otherwise disturbed. Gordon confirmed the restroom floor was clean and dry before she left to go on break at approximately 8:45 p.m., and Anderson fell shortly thereafter. We find there is simply no evidence of a time frame sufficient to impute constructive notice of the water on the restroom floor to Harlow's.

¶37. Despite the lack of evidence that any Harlow's employee had actual or constructive notice that there was water on the restroom floor before Anderson fell, Anderson asserts that the unsworn, uncertified statements from Mayfield, Wilson, and Harlow's employee Smith "establish that there was 'a lot' of water on the bathroom floor where she slipped and fell." This information, Anderson asserts, coupled with the fact that she fell shortly after Gordon went on break, could allow "[a] reasonable jury [to] determine that . . . Gordon either saw the water and did nothing . . . or that she lied about going into the bathroom before her break." According to Anderson, "[e]ither way, if the water was on the floor when . . . Gordon took her break, she (and by extension, Harlow's) knew or should have known about it."

14

¶38.    We need not address the admissibility of these statements because even if we consider them, they only demonstrate the existence of water around Anderson *after* she fell.  There is no evidence that the water was there before Anderson fell.  Although "circumstantial evidence may be used to prove the length of time a dangerous condition has existed," *Parson v. Go Knightrider LLC*, 282 So. 3d 609, 618 (¶28) (Miss. Ct. App. 2019), that "circumstantial evidence . . . must be such that it creates a legitimate inference that places it beyond conjecture." *Id.* (citations and internal quotation marks omitted).

¶39.    In this case, we find that Anderson's theory that Gordon either missed seeing the water before she went on break, or did not check the restroom before her break, simply fails "to remove the case from the realm of conjecture and place it within the field of legitimate inference with respect to the time the [water] existed in the [Harlow's restroom]." *Id.* (citation and internal quotation marks omitted).  We find that this is particularly true here, where the only evidence is that Gordon *did* check the restroom and left it clean and dry before going on her break.  Thus, we find that Anderson has failed to establish any time frame sufficient to impute constructive notice of the water to Harlow's, or sufficient to show Harlow's "had an opportunity to correct the dangerous condition," *Thomas*, 360 So. 3d at 214 (¶36), as required to show that Harlow's had actual or constructive notice of the water in the restroom.

¶40.    We therefore find that the circuit court correctly concluded that Anderson failed to show the existence of a genuine issue of material fact with respect to whether Harlow's had

15

actual or constructive notice of the water on the restroom floor. *See Spangler*, 689 F. App'x at 834 (finding that casino patron who slipped and fell in water in casino restroom and sued failed to show the existence of a genuine issue of material fact on the issue of constructive notice where she did not "produce evidence that demonstrate[d] a time period sufficient to impute constructive knowledge of the puddle of water to [the defendant casino]"); *see also Dolgencorp LLC v. Payton*, 366 So. 3d 838, 843 (¶20) (Miss. 2023) (reversing trial court's denial of summary judgment, finding that plaintiff failed to establish constructive notice where "[o]ne would have to wholly speculate—without any evidence to back it up—that the Carpet Fresh [that plaintiff slipped in] had been there long enough to establish constructive knowledge . . . such a presumption is not sufficient to prove the condition existed long enough to establish constructive knowledge"); *Haggard v. Wal-Mart Stores Inc.*, 75 So. 3d 1120, 1127 (¶16) (Miss. Ct. App. 2011) (involving store patron who slipped in water in store aisle failed to show the existence of a genuine issue of material fact on constructive notice issue because she did not establish any time frame to impute constructive knowledge of the water to defendant store owner).

## CONCLUSION

¶41.    For the reasons discussed above, we find that Anderson "failed to produce evidence of any elements of a slip-and-fall case as required under Mississippi law." *Byram Café*, 344 So. 3d at 848 (¶23). Therefore, we find that the circuit court correctly granted summary judgment to Harlow's and dismissed Anderson's lawsuit against it. The judgment of the

circuit court is affirmed.

¶42. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**